A99A0656. SLETTO et al. v. HOSPITAL AUTHORITY OF HOUSTON COUNTY et al.
(521 SE2d 199)

SMITH, Judge.

Leonard and Stellie Sletto filed this action against the Hospital Authority of Houston County d/b/a Houston Medical Center (HMC), Marlyn Jackson, and Smart Corporation as a result of the unauthorized release of Leonard Sletto's psychiatric records. The trial court granted summary judgment to all defendants, and the Slettos appeal. For the reasons that follow, we affirm in part and reverse in part.

The essential facts are not disputed. Leonard Sletto filed an action in August 1992 against an individual for personal injuries he allegedly received as a result of an automobile accident. During the course of discovery, the defendant's attorney, James Towson, sent a request for production of documents to non-party HMC requesting all of Sletto's records. In response, HMC released to Towson copies of Sletto's medical records, including certain mental health records, without obtaining authorization from Sletto to release the mental

health records. Appellee Smart Corporation was contracted by HMC to provide photocopying and distributing services of medical records and apparently copied Leonard Sletto's records on HMC's behalf. The custodian of medical records for HMC, Marlyn Jackson, testified on her deposition that the release was "an error" or "oversight" made by her.

After HMC sent the records to Towson, HMC's attorney asked Towson that the records be returned, and after having his paralegal review the records, Towson did so. The Slettos filed this action, alleging that Leonard Sletto had "suffered pecuniary loss and injury to his peace, happiness, feelings, and has suffered an invasion of his legal right of privacy as a result of" HMC's unauthorized disclosure of his psychological records. The complaint also alleged that Stellie Sletto had suffered a loss of consortium. All defendants moved for summary judgment on several grounds. They contended, among other things, that they were entitled to summary judgment on any invasion of privacy claim. HMC and Jackson also argued that summary judgment was warranted because the Slettos could not prevail on their action alleging purely emotional harm. Further, Smart Corporation argued that it was entitled to summary judgment based on the running of the applicable statute of limitation. The trial court granted summary judgment to the defendants, finding that defendants did not intentionally release Leonard Sletto's psychiatric records. The trial court further found that Leonard Sletto was not entitled to recover for a claim of negligent infliction of emotional distress, because that required "some physical impact arising directly from the release of the mental health records." The trial court also concluded that the Slettos were not entitled to recover on their an invasion of privacy claim.

On appeal, the Slettos raise no contention with respect to the trial court's finding concerning the invasion of privacy claim but instead argue that the "impact rule" does not bar recovery in this case. We conclude that Smart Corporation was entitled to summary judgment with respect to Leonard Sletto's claim, based on the expiration of the statute of limitation. We also agree with the Slettos, however, that summary judgment was incorrectly granted to HMC and Jackson, but for different reasons.

1. The threshold issue in this case is whether the unauthorized release of Leonard Sletto's psychiatric records affords them a cause of action under our law. The Slettos acknowledge on appeal that they seek damages under OCGA § 51-12-6. If damages for mental pain and suffering sought under this section "are not accompanied by physical or pecuniary loss, recovery is allowed only if the conduct complained of was malicious, wilful or wanton." (Punctuation omitted.) *Carroll v. Rock*, 220 Ga. App. 260, 261 (469 SE2d 391) (1996).

See also *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992); *Ob-Gyn Assoc. of Albany v. Littleton*, 259 Ga. 663, 665-666 (2) (386 SE2d 146) (1989); *Ford v. Whipple*, 225 Ga. App. 276, 277-278 (483 SE2d 591) (1997). Furthermore, even if the conduct was malicious, wilful, and wanton, it must have been directed toward the plaintiff to warrant recovery. *Ryckeley*, supra at 829. And it is true, as argued by appellees, that the record is devoid of evidence that Leonard Sletto suffered a physical impact. The Slettos concede as much in their appellate brief. We must also agree with appellees that the record does not show that appellees' actions were "malicious, wilful, or wanton" or that any act or omission was directed toward the Slettos. Jackson testified unequivocally that HMC inadvertently released the records and that she did not harbor any malice toward Leonard Sletto, nor did she intend to injure him. She also stated that she "did not personally know or have any knowledge of Mr. Sletto or his records at HMC prior to the filing of this lawsuit."

But even though Leonard Sletto suffered no physical injury and HMC's actions were not wilful, wanton, or malicious that does not end our inquiry, for this case is not defined solely by reference to OCGA § 51-12-6. This case is not simply an action concerning the emotional consequences on a plaintiff arising out of a defendant's alleged commission of a negligent tort, such as a defendant's damage to a burial ground, *Ryckeley*, supra, the negligent loss of a plaintiff's pet by defendant veterinary clinic, *Carroll*, supra, a vehicular collision, *Ford*, supra, or even the alleged negligent delivery of an infant who later died, *Littleton*, supra. Instead, this case involves the unauthorized release of psychiatric records, records specifically granted special, protective treatment under our law. For example, OCGA § 24-9-21 (5) expressly provides that "certain admissions and communications excluded on grounds of public policy" include "[c]ommunications between psychiatrist and patient." Other statutes manifest this strong public policy against the unauthorized release of mental health records. OCGA § 37-3-166 (a) (2) carefully and strictly defines those persons to whom mental health records may be released. As stated in *Mrozinski v. Pogue*, 205 Ga. App. 731 (423 SE2d 405) (1992):

> [T]he legislature's pronouncements in OCGA §§ 37-3-166 (a) and 37-7-166 (a) as to disclosure of clinical records of persons receiving hospital treatment for mental illness and substance abuse are that a clinical record for each patient shall be maintained *and no part of it shall be released*. Even when clinical records are properly disclosed pursuant to these Code sections, such authorization shall not permit disclosure of matters privileged under the laws of this state.

> [Cits.] We conclude that Georgia law has an exceedingly strict view as to what are privileged communications.

(Punctuation omitted; emphasis in original.) Id. at 734 (2).[1] See also OCGA § 43-39-16 (psychologist-patient privilege). 42 USC § 290dd-2 permits the release of records relating to the treatment of substance abuse only in certain strictly limited circumstances. See also 42 CFR §§ 2.1-2.67. Also, the right of confrontation may yield to the privilege afforded to psychiatric records, if the party seeking to use the privileged information cannot show the necessity of obtaining such records. See *Bobo v. State*, 256 Ga. 357 (349 SE2d 690) (1986). Our discovery and evidence codes, as well as our case law, therefore set extremely strict limitations on the release of mental health records.

Here, Jackson testified that each year, the department she supervises "produces approximately 500,000 pages of medical records" and receives approximately 60 to 70 requests for medical records each day. Significantly, she acknowledged that she did not "hold confidentiality of psychiatric records any higher than the confidentiality of ordinary medical records." She also acknowledged that she did not "differentiate a release for ordinary medical records from a release for psychiatric records." Under the very limited facts of this case, and bearing in mind the strong public policy of maintaining strict compliance with the requirements governing release of psychiatric records, we cannot say that the trial court correctly granted summary judgment to HMC and Jackson. Given the volume of records released by HMC each year, the number of requests presented to Jackson's department, and her admissions, and in light of our laws concerning the release of psychiatric records, whether HMC adequately controlled its records is at least a jury issue. To condone the careless release of psychiatric records resulting from inadequate record controls would vitiate our State's clear policies concerning such records. Furthermore, to refuse summarily to hold HMC and Jackson accountable for their actions might encourage even more carelessness in the future. The trial court's grant of summary judgment to Jackson and HMC is therefore reversed.

2. We next address the trial court's grant of summary judgment in favor of Smart Corporation. The Slettos filed their original action against defendants HMC and Jackson in December 1994. They amended the complaint several times, without ever adding Smart Corporation as a defendant, before they voluntarily dismissed the

---

[1] Although *Mrozinski* addresses the issue of a psychiatrist's intentional release of a patient's records, rather than a hospital's unintentional release of such records, its discussion concerning psychiatric privilege is helpful and relevant to our analysis of the issues involved in this case.

complaint in February 1996. The Slettos then filed this renewed action May 8, 1996, naming Smart Corporation as a defendant.

Although OCGA § 9-2-61 permits dismissal and renewal of complaints, that Code section "may not be used to suspend the running of the statute of limitation as to defendants different from those originally sued." (Citations and punctuation omitted.) *Reedy v. Fischer*, 193 Ga. App. 684, 685 (388 SE2d 759) (1989). While the record does not reveal an exact date on which the records were copied and released, Stellie Sletto testified that she learned of the release sometime in April 1994 and that she told her husband of this fact in July or August of the same year. It follows that the records were released sometime before April 1994. The parties do not appear to dispute that the two-year statute of limitation applicable to actions alleging injuries to the person applies to Leonard Sletto's claim. They do dispute, however, the date on which the statute began to run. We agree with Smart Corporation that the statute began to run on the date that Leonard Sletto's records were released, rather than on the date that Leonard Sletto discovered the breach occasioned by the release of the records. The Slettos' "ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitation. [Cits.]" *Metlife v. Wright*, 220 Ga. App. 827-828 (1) (470 SE2d 717) (1996). The Slettos' "reliance upon the discovery rule . . . is misplaced since that rule has been confined to cases of bodily injury which develop only over an extended period of time. [Cit.]" Id. See also *Corp. of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (1) (368 SE2d 732) (1988).

The unauthorized release of Leonard Sletto's psychiatric records occurred sometime before April 1994. The statute of limitation on his claim therefore would have run sometime before April 1996. He never amended his original complaint to include Smart Corporation as a party defendant before the limitation period expired. Instead, he named Smart Corporation as a defendant only in his renewed complaint, which was filed in May 1996, after the expiration of the two-year statute of limitation. This was not permissible under *Reedy*, supra. See also *Patterson v. Rosser Fabrap Intl.*, 190 Ga. App. 657, 658-659 (379 SE2d 787) (1989). We therefore affirm the trial court's grant of summary judgment to Smart Corporation with respect to Leonard Sletto's claims.

Stellie Sletto's loss of consortium claim is not time barred, however, notwithstanding the derivative nature of such a claim, because the statute of limitation on a loss of consortium claim is four years. OCGA § 9-3-33. See also *Mears v. Gulfstream Aerospace Corp.*, 225 Ga. App. 636, 639 (2) (484 SE2d 659) (1997); *Jones v. Lamon*, 206 Ga. App. 842, 846-847 (2) (426 SE2d 657) (1992) (physical precedent only). We therefore reverse the grant of summary judgment to Smart

Corporation with respect to Stellie Sletto's claim for loss of consortium.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Eldridge, J., concur specially.*

ELDRIDGE, Judge, concurring specially.

While I fully concur in Division 2 of the majority opinion and I fully concur in the analysis and holding of Division 1, I do not agree with that portion of Division 1 that the release of the records did not present a jury issue that HMC and Jackson's conduct was "malicious, wilful, or wanton."

First, this case is about the unauthorized release of psychiatric hospital treatment records without subpoena or court order. Second, the unauthorized release of psychiatric records is expressly prohibited under OCGA §§ 24-9-21 (5) (patient-psychiatrist privilege); 37-3-166 (psychiatric hospital records); 43-39-16 (patient-psychologist); 42 USC § 290dd-2 (confidentiality of drug and alcohol treatment records); or 42 CFR Part 2, §§ 1-2.23, pp. 7-18 for any hospital patient treated for drug, alcohol, or psychiatric condition, and such privilege of confidentiality is the most restrictive in the discovery and evidence codes. Such psychiatric privilege is so restrictive that even the constitutional right of confrontation of a prosecution witness will not overcome the privilege where there exists a substantial equivalent source of information available that is not privileged or the privilege has been waived. See *Bobo v. State*, 256 Ga. 357, 358-360 (3) (349 SE2d 690) (1986). The facts and circumstances of this case show such conscious indifference to the consequences of such statutory duties as to constitute wanton misconduct.

"Conscious indifference," "reckless disregard of the rights of others," and "wilful and wanton misconduct" refer to essentially the same degree of culpability. See *Arrington v. Trammell*, 83 Ga. App. 107, 110-112 (62 SE2d 451) (1950). There are two elements to "wilful and wanton misconduct"; first, the defendant must be actually aware of the plaintiff as subject to the risk of harm, i.e., the potential presence of psychiatric records in a request for all the patient's medical records in response to a request for production of documents in a lawsuit; second, the defendant must recognize and appreciate as a reasonably prudent person the substantial probability of harm to the former psychiatric patient if their psychiatric records are released. See generally *Carr v. John J. Woodside Storage Co.*, 217 Ga. 438, 443 (1) (123 SE2d 261) (1961); *Poole v. City of Louisville*, 107 Ga. App. 305, 307-308 (1) (130 SE2d 157) (1963); *Arrington v. Trammell*, supra; *Ga. Power Co. v. Deese*, 78 Ga. App. 704, 708 (51 SE2d 724) (1949). "Disregard of general consequences is a part of wanton behavior." *Ford v. Whipple*, 225 Ga. App. 276, 278 (483 SE2d 591) (1997).

First, it has long been recognized that wilful and wanton conduct is not a form of negligent conduct but is a separate and distinct degree of conduct that more closely equates to intentional conduct. "There is an element of intent, actual or imputed, in wilful and wanton conduct which removes such conduct from the range of conduct which may be termed negligent." (Punctuation omitted.) *Martin v. Gaither*, 219 Ga. App. 646, 652 (466 SE2d 621) (1995).

*McEachern v. Muldovan*, 234 Ga. App. 152, 157 (2) (b) (505 SE2d 495) (1998).

"To state a cause of action for emotional distress in the absence of physical injury, no actual damages need be shown where wilful, wanton, voluntary or intentional misconduct is alleged. *Hamilton v. Powell, Goldstein, Frazer &c.*, 252 Ga. 149, 150 (311 SE2d 818) (1984)." *Whitehead v. Cuffie*, 185 Ga. App. 351, 353 (364 SE2d 87) (1987).

[W]hen the claim is for intentional misconduct, damages for mental distress may be recovered without proof of physical injury. *Tuggle v. Wilson*, 248 Ga. 335, 337 (282 SE2d 110) (1981). That principle has its corollary in this: reckless and wanton disregard of consequences may evince an intention to inflict injury. *Carr v. Woodside Storage Co.*, [supra at 443]. "(I)t is equally well established that for a reckless disregard of the rights of others, equivalent to an intentional tort by the defendant, the injured party may recover for the mental pain and anguish suffered therefrom." *Pollard v. Phelps*, 56 Ga. App. 408 (1) (193 SE 102) (1937), quoted with approval in *McCoy v. Ga. Baptist Hospital*, 167 Ga. App. 495, 498 (306 SE2d 746) (1983).

*Hamilton v. Powell, Goldstein, Frazer &c.*, supra at 150. "[T]hat entire want of care which would raise the presumption of a conscious indifference to the consequences . . . relates to an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights." *Gilman Paper Co. v. James*, 235 Ga. 348, 351 (219 SE2d 447) (1975); accord *Bowen v. Waters*, 170 Ga. App. 65, 67 (2) (316 SE2d 497) (1984); *Skil Corp. v. Lugsdin*, 168 Ga. App. 754, 755 (1) (309 SE2d 921) (1983). Such standard of wilful misconduct applies to punitive damages and is applicable here, because OCGA § 51-12-6 prior to 1987 was a species of punitive or vindictive damages where the entire injury was directed to the peace and happiness of the plaintiff, but the General Assembly changed the nature of such dam-

ages from punitive to general damages.[2] Clearly, the unauthorized release of this patient's psychiatric records may be considered by a jury to be a wilful and wanton act directed at the plaintiffs. Thus, an intentional tort was directed at the plaintiffs alone, allowing recovery for mental pain and suffering where the entire injury is to the peace and happiness. See *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992); *Ob-Gyn Assoc. &c. v. Littleton*, 259 Ga. 663, 665 (2) (A) (386 SE2d 146) (1989); *Hamilton v. Powell, Goldstein &c.*, supra at 150; *Westview Cemetery v. Blanchard*, 234 Ga. 540 (216 SE2d 776) (1975); *Jordan v. Atlanta Affordable Housing Fund, Ltd.*, 230 Ga. App. 734, 736-738 (2) (498 SE2d 104) (1998); *Ford v. Whipple*, supra at 278.

For the defendants to confess that they were negligent as a lesser degree of culpability does not eliminate the jury issue that the conduct was wilful and wanton. It was for the jury to decide if the defendants were negligent or wilful and wanton and not for the trial court. *Arrington v. Trammell*, supra at 113.

I am authorized to state that Presiding Judge Pope joins in this special concurrence.

DECIDED JULY 16, 1999 

*Dozier, Lee, Graham & Sikes, Joel M. Grist, Jr.*, for appellants.
*Jones, Cork & Miller, Wendell K. Howell, C. Ashley Royal*, for appellees.

---

[2] Ga. L. 1987, p. 915, § 6, codified as OCGA § 51-12-6, repealed vindictive damages as a punitive damage and recreated such damages to the peace and happiness as a general damage, measured in the enlightened consciences of impartial jurors. The descriptive content title, id. at 916, reads "to provide for injuries to peace, happiness, or feelings." The body of OCGA § 51-12-6 expressly states that in such action punitive damages are not recoverable.