## A07A0772. HAUGHTON v. CANNING.
(650 SE2d 718)

BARNES, Chief Judge.

Cherry Haughton sued psychiatrist Suzanne Canning for medical malpractice and invasion of privacy for sending letters containing psychiatric information to Haughton's other physicians and for releasing her psychiatric records to an attorney. During the jury trial, the trial court granted Canning's motion for directed verdicts on Haughton's claims of medical malpractice and invasion of privacy arising from the letters, and for punitive damages. The jury returned a defense verdict on Haughton's invasion of privacy claim related to the release of her records, and she appeals, contending that the trial court erred in granting the directed verdicts, in failing to give certain jury charges, in making certain evidentiary rulings, and in denying her motion for a judgment notwithstanding the verdict. For the reasons that follow, we affirm.

1. A motion for directed verdict should be granted only if none of the evidence conflicts and all of the evidence demands a particular verdict. *Miranda v. Fulton DeKalb Hosp. Auth.*, 284 Ga. App. 203, 204-205 (1) (644 SE2d 164) (2007). In considering the motion, the court must view the evidence in the light most favorable to the nonmovant. "[T]his approach governs the actions of appellate courts as well as trial courts." (Citation and punctuation omitted.) *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 159 (1) (256 SE2d 916) (1979). The standards for granting a motion for judgment notwithstanding the verdict are the same as those governing the direction of a verdict. *Goggin v. Goldman*, 209 Ga. App. 251, 252 (433 SE2d 85) (1993).

2. Haughton first contends that the trial court erred in granting Canning's motion for a directed verdict on her medical malpractice claims, which were based on Canning's three letters to Haughton's treating physicians. Haughton conceded at trial that one of the letters did not constitute medical malpractice, but argues that the jury should have considered whether the two letters Canning sent on August 22, 1997 constituted malpractice.

Three elements are essential to establish a medical malpractice claim: the doctor's duty to his patient; the doctor's breach of that duty through the failure to exercise the requisite degree of skill and care; and an injury proximately caused by the doctor's failure. *Miranda*, supra, 284 Ga. App. at 205-206. Plaintiff must prove "that the injury complained of proximately resulted from [a] want of care or skill. A bare possibility of such result is not sufficient." Id. at 205.

When arguing to the trial court that she was entitled to a directed verdict on the malpractice claim, Canning stated that Haughton's expert witness did not testify that any breach of her duty caused

Haughton damages, and therefore she had not met the third requirement of showing that Canning proximately caused an injury. In fact, she argued, Haughton's expert specifically testified that he could not say if Haughton's mental anguish was caused by the disclosure of her psychiatric information or by being exposed to toxic mold, for which she successfully sued her builder after 1997. The trial court agreed that Haughton had failed to establish that Canning's actions proximately caused Haughton any injury, and granted the directed verdict on her medical malpractice claim.

Here, citing to the expert's affidavit attached to her complaint, Haughton argues that because she could recover for injured feelings alone due to Canning's invasion of her privacy, her testimony that she suffered emotional distress from the unauthorized disclosure was sufficient to establish harm. She cannot cite any testimony by her expert establishing that a breach of the standard of care proximately caused an injury, because, while portions of the deposition of Haughton's expert witness were read to the jury, that testimony was not transcribed and the deposition is missing from the record.

Damages due to an invasion of privacy do not establish injuries due to medical malpractice. They are separate causes of action. Further, without reviewing the expert's testimony, "we must assume as a matter of law that the evidence . . . supported the trial court's rulings." *Studard v. Dept. of Transp.*, 219 Ga. App. 643, 644 (1) (466 SE2d 236) (1995). "It is the duty of the party asserting error to show it by the record; mere assertions of error in briefs cannot satisfy this duty. [Cit.]" *Jarallah v. Schwartz*, 202 Ga. App. 32, 34 (1) (413 SE2d 210) (1991). Accordingly, the trial court did not err in directing a verdict on Haughton's malpractice claims or in denying the motion for judgment notwithstanding the verdict. See *King v. Zakaria*, 280 Ga. App. 570, 575 (2) (a), n. 4 (634 SE2d 444) (2006).

3. Haughton also contends that the trial court erred in granting Canning's motion for a directed verdict on her claim that Canning's letters to her treating physicians violated her right to privacy, asserting that the evidence showed an improper release of psychiatric information constituting an actionable invasion of privacy.

There are at least three elements necessary to recovery for an invasion of one's right of privacy: (a) the disclosure of private facts must be a public disclosure; (b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; [and] (c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances.

(Citations and punctuation omitted.) *Dortch v. Atlanta Journal*, 261 Ga. 350, 352 (2) (405 SE2d 43) (1991) (log of cell phone calls is not "private" and thus available under Open Records Act).

In most cases, whether the private facts were "published" was not an issue, involving, for example, a photograph in a newspaper (*Cabaniss v. Hipsley*, 114 Ga. App. 367, 372 (2) (151 SE2d 496) (1966); *Bazemore v. Savannah Hosp.*, 171 Ga. 257 (155 SE 194) (1930)); or the broadcast of a recognizable face on television (*Multimedia WMAZ v. Kubach*, 212 Ga. App. 707 (443 SE2d 491) (1994)). The issue of psychiatrist-patient privilege arises most often when the psychiatrist provides information to a third party through the discovery process or when a party seeks to introduce psychiatric information during a court proceeding. In those cases, whether the private facts were or would be publicly disclosed is not analyzed, but is accepted as true. See, e.g., OCGA § 24-9-40 (governing release of medical information); *Gilmore v. State*, 175 Ga. App. 376, 378 (333 SE2d 210) (1985) (no error in failure to suppress evidence obtained from defendant's doctor); OCGA § 24-9-21 (5) (relationship of psychiatrist and patient privileged); *Bobo v. State*, 256 Ga. 357, 358 (2) (349 SE2d 690) (1986) (no error in denying admission of witness's psychiatric history). In this case, Haughton has not shown that her private facts were disclosed publicly.

Instead, the evidence shows that Haughton signed a consent form to allow Canning to obtain her medical record from her treating pain specialist, and after Canning obtained those records, she sent letters to him and to Haughton's family doctor on August 22, 1997, thanking the specialist for sending the records and reviewing Haughton's history and symptoms with both doctors. These two letters constituted part of Haughton's invasion of privacy claim, along with a third letter to her family doctor. Canning testified that she sent these two letters because she was very concerned about the marked change Haughton demonstrated since 1995, and could not determine which medications Haughton was taking, who had prescribed them, or what course of treatment Haughton was undergoing. Haughton also verbally authorized Canning to communicate with the specialist Chandler and her family doctor, Melville, about her care. In the third letter, written on October 10, 1997, Canning documented the substance of a telephone call between herself, Haughton and her family doctor.

Along with a separate disclosure of records related to Haughton's suit against her builder, which went to the jury, these three letters formed the basis of Count 5 of Haughton's complaint, in which she alleged that Canning's "acts constitute the tort of unauthorized public disclosure of private facts (invasion of privacy)." The trial court denied Canning's motion for directed verdict on Haughton's invasion

of privacy claim regarding the records disclosure, but granted a directed verdict to Canning on whether the three letters could constitute an invasion of privacy.

The information in the three letters was disclosed to Haughton's treating physicians in an attempt to coordinate care. According to Canning, Haughton's expert witness testified regarding the importance of coordinating care, a representation Haughton does not dispute. Assuming but not deciding that sharing this information with treating physicians is not a malpractice issue, it did not amount to a "public" disclosure. No evidence shows that either of these doctors shared the information with anyone else. Without a public disclosure, Haughton's invasion of privacy claim regarding the three letters does not present a jury question as a matter of law, and the trial court did not err in directing a verdict in this regard or in denying the motion for judgment notwithstanding the verdict.

4. The jury considered Haughton's invasion of privacy complaint involving Canning's release of her medical file to her opposing counsel in a suit she and her husband filed against their builder, and returned a defense verdict. Haughton contends that the trial court erred in charging the jury.

Haughton's husband testified that in 1997, Haughton began experiencing severe cognitive dysfunctions and memory problems, which eventually were determined to be caused by "toxic mold" in their house. Haughton testified that she was "not thinking straight" when she saw Canning in 1997, and was disorganized, crying and scared. Because she was not working at the time, she claimed no lost wages from Canning's actions, and admitted that she had suffered mental anguish from the toxic mold symptoms before seeing Canning in 1997.

In 1999, the Haughtons sued their builder, contending that the builder's negligence caused the toxic mold to develop and cause severe injuries. The builder's counsel sent a Request for Production of Documents to Canning, seeking Haughton's medical records. The request said that Canning had to respond within ten days of receiving the request, so after receiving no objection from Haughton within that ten-day period, Canning sent the file on the eleventh day, as she thought she was supposed to do. The next day, Haughton's lawyer objected to the production of these psychiatric records, but Canning had already sent them. This disclosure constituted the basis for the invasion of privacy claim that went to the jury.

The builder's counsel testified that when he received the records, he did not show them to anyone else but his partner and co-counsel, including his client, and told Haughton's lawyer he would not discuss the records since Haughton had objected to their production. The

builder's counsel also did not question Haughton about her psychiatric records at her deposition. Haughton argued at trial that her objection was timely because she had thirteen days to file it — ten days plus three days for mailing — and that Canning was therefore liable for producing the records over her objection.

(a) Haughton contends that the trial court erred in failing to give her requested charge that "a failure to act in response to a request for privileged matter from a non-party health care provider or facility under OCGA § 9-11-34 (c) (2) does not waive the party's psychiatrist-patient privilege," citing *Kennestone Hosp. v. Hopson*, 273 Ga. 145, 149 (538 SE2d 742) (2000). The trial court declined to give the charge because Haughton did not fail to respond to the request and therefore waiver was not an issue in the case.

A charge must be "adjusted to the pleadings and evidence; it must not be argumentative or seek an expression of opinion on the part of the court; and it must not be so phrased so as to have [the] tendency to confuse and mislead the jury or to becloud the issues in the case." (Citation and punctuation omitted.) *Gen. Ins. Svcs. v. Marcola*, 231 Ga. App. 144, 147 (497 SE2d 679) (1998). In this case, no one testified at trial that the objection was not timely filed, and the court charged the jury on OCGA § 9-11-34 (c), which outlines how to count the days within which one must act.

Because no evidence suggested that Haughton had waived her privilege by failing to object, waiver was not an issue for the jury to decide. Therefore, the trial court did not err in declining to give the requested jury charge when it was not "precisely adjusted to some principle involved in the case." See *Asbury v. Ga. World Congress Center*, 212 Ga. App. 628, 631 (4) (442 SE2d 822) (1994).

(b) Haughton also contends that the trial court erred in failing to give her requested charge that "an unauthorized release of psychiatric records constitutes an invasion of privacy." The court instead charged the jury that an unauthorized release *may* constitute an invasion of privacy, which is a correct proposition of law. *Sletto v. Hosp. Auth. of Houston County*, 239 Ga. App. 203 (521 SE2d 199) (1999). The court also charged the jury regarding the special status of psychiatric records and the confidentiality of communications between psychiatrist and patient, as well as the right to privacy and the tort of unauthorized public disclosure of private facts. We find no error.

5. Haughton contends that the trial court erred in ruling that the evidence showed no wilful or wanton conduct to support her claim for punitive damages and granting a directed verdict on that claim.

"Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness,

oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). As discussed earlier, the only tort properly submitted to the jury was Haughton's invasion of privacy claim regarding the production of records pursuant to a discovery request.

> Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton. [Cit.]

*Ambling Mgmt. Co. v. Purdy*, 283 Ga. App. 21, 32 (7) (640 SE2d 620) (2006).

In this case *no evidence*, much less "clear and convincing" evidence, raised a question whether Canning's actions warranted punitive damages. To the contrary, she testified at length regarding her attempts to follow what she perceived the law to be, as she learned through previous actions. Accordingly, the trial court did not err in granting the directed verdict on Haughton's punitive damages claim.

*Sletto*, supra, 239 Ga. App. at 203, does not require a different result. Because two judges concurred specially as to the issue of whether such a disclosure could be considered "wilful and wanton," that portion of the opinion is not binding precedent but is physical precedent only per Court of Appeals Rule 33 (a).

6. Finally, Haughton contends the trial court also erred in failing "to grant a directed verdict for the plaintiff on the issue of whether the objection to the non-party request for the production of documents was timely," because it was made within the statutorily allowable time of 13 days. This was not a proper subject for a directed verdict, which Haughton did not seek when Canning rested, but is an evidentiary issue which arose during the charge conference. Haughton asked the court "to tell the jury that as a matter of law the objection was filed in a timely manner." The trial court stated it did not want to comment on the evidence, and Canning renewed her objection to any evidence regarding the issue of the extra three days. The court then proposed to charge the jury on the statute regarding the computation of days, and after further colloquy, Haughton acquiesced to the manner of proposed charges on timeliness, did not repeat her request for a "directed verdict," and obtained no ruling on the issue. Haughton cannot now claim the court erred in taking actions to which she agreed, as she has "waived appellate review of this

enumeration of error." *Premier Cabinets v. Bulat*, 261 Ga. App. 578, 580 (2) (583 SE2d 235) (2003).

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED JULY 6, 2007 —
RECONSIDERATION DENIED JULY 31, 2007 —

*Kennon Peebles, Jr.*, for appellant.
*Sparwath & Satcher, Milton B. Satcher III*, for appellee.