A07A2237. LYON et al. v. SCHRAMM et al.

(661 SE2d 178)

ADAMS, Judge.

On August 29, 2006, Betty Lyon filed an action for medical malpractice arising out of an "overwhelming post-splenectomy infection" (OPSI) she suffered in September 2004, 22 years after having her spleen removed.[1] She alleged that none of the various doctors she saw over the five years preceding her lawsuit ever told her that asplenic patients faced the life-threatening risk of OPSI, that they never prescribed recommended vaccines to guard against infections that can lead to OPSI, and that they never advised her to take antibiotics at the first sign of a cold as is also recommended. She eventually contracted OPSI, and complications resulted in the need to amputate a significant part of both of her arms and legs.

Lyon sued eight doctors (and their practices) whom she had seen for unrelated regular and specialized care during the five years

---

[1] Her husband's claim is for loss of consortium.

preceding her lawsuit.[2] She limited her claims of malpractice to only those acts of negligence that occurred between August 29, 2001 (five years prior to the date suit was filed) through September 2004 (the date of her injury). The trial court dismissed three of the doctors (Schramm, Barnes, and Sharon) whom she had begun to see earlier than August 29, 2001 on the ground that the five-year statute of repose had run from when they first provided medical care to Lyon, regardless of whether they committed negligence thereafter. The doctors whom she had begun to see more recently than that date (Modi, Wooten, Faribrother, Franklin, and Parker) withdrew their motions to dismiss and remain in the suit. Lyon asserts the trial court erred because each time the three doctors examined or treated her after April 29, 2001, they again breached their duty of care. She contends the statute of repose should be construed to begin running *on each occasion* that the doctors failed to inform her about the risks and related preventative measures associated with not having a spleen.

On appeal, we conduct a de novo review of a trial court's ruling on a motion to dismiss. *Penny v. McBride*, 282 Ga. App. 590 (639 SE2d 561) (2006). Our role is "to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts." Id.

The two-year statute of limitation is not at issue in this appeal apparently because the injury — Lyon's OPSI — occurred less than two years before she filed suit and the statute of limitation begins to run from the date of injury. See OCGA § 9-3-71 (a). But, unlike the statute of limitation, the statute of repose begins to run when an act of negligence is committed. See OCGA § 9-3-71 (b); *Christian v. Atha*, 267 Ga. App. 186 (598 SE2d 895) (2004) (statute of repose focuses on negligent act or omission, not the injury). The statute provides:

> Notwithstanding [the two-year statute of limitation], in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred.

OCGA § 9-3-71 (b). The statute of repose can bar a claim before the

---

[2] For example, Lyon visited Dr. Schramm (one of the appellees) on May 22, 2000 for poison ivy. On March 9, 2001, she saw Schramm for foot pain and abdominal pain, and at other times for a sore throat and post-nasal drip, for a physical exam, and for a cough and congestion. Similarly, Lyon visited Dr. Sharon (an appellee) in March 1999 for prenatal care with regard to her second child; she later visited him for a cough and again for post-partum care in connection with her third child.

claim accrues, in other words, even before the injury occurs. See *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657, 659 (2) (437 SE2d 308) (1993). As the Supreme Court has said, "the legislature may conclude that the time may arrive when past transgressions are no longer actionable." Id. Finally, "by definition, a statute of ultimate repose cannot be 'tolled'," for any reason. (Citations and punctuation omitted.) *Simmons v. Sonyika*, 279 Ga. 378, 380 (614 SE2d 27) (2005). See, e.g., *Kaminer v. Canas*, 282 Ga. 830, 838 (3) (653 SE2d 691) (2007) (statute of repose not "tolled until such time as [doctors] ceased to occupy the status of treating physicians").

Thus, setting aside the question of a doctor's duty in this situation and other obvious questions not before us, the sole issue in this case is whether for the purposes of the statute of repose the three relevant doctors can be said to have committed new and separate acts of negligence each time they saw Lyon, or whether their more recent alleged omissions are more properly seen as a continuation of or in some sense the same as their earlier alleged negligence, or merely a failure to correct their earlier negligence.

"Three elements are essential to establish a medical malpractice claim: the doctor's duty to his patient; the doctor's breach of that duty through the failure to exercise the requisite degree of skill and care; and an injury proximately caused by the doctor's failure. [Cit.]" *Haughton v. Canning*, 287 Ga. App. 28 (2) (650 SE2d 718) (2007). For the purposes of the statute of repose, we are concerned with only the first two: duty and breach, i.e., the negligent act or omission. In this case, Lyon alleges, and her experts aver, that the doctors knew she had no spleen, had a duty to inform her of the risks and precautions associated with not having a spleen, yet failed to do so on each of her visits to see them. We find no problem concluding that she has alleged separate omissions for each time she visited her doctors. The Supreme Court of Georgia has recently agreed with this Court that "it would be absurd to hold as a matter of law that a doctor can only misdiagnose a patient once, regardless of the length of the treatment or the course of the patient's illness." (Punctuation omitted.) *Kaminer*, 282 Ga. at 835 (1). We conclude it would also be absurd to hold that a doctor can only fail to warn a patient once during the course of treatment. Indeed, who can say which failure to inform caused the plaintiff's OPSI, arguably the last one.

For example, in *Allen v. Belinfante*, 217 Ga. App. 754 (458 SE2d 867) (1995), the plaintiff filed suit in June 1994 and alleged that her oral surgeon failed to warn her of serious health risks associated with certain implants he used to treat her jaw problems during surgery eight years earlier. The trial court held that the claims were barred by the two-year statute of limitation and the five-year statute of repose. On appeal, the plaintiff argued that her suit was timely "due

to . . . tolling . . . because of . . . fraud occurring within two years of the surgery or, alternatively, that there was a continuing tort." Id. at 756 (3). This Court held that survival of the plaintiff's claims did not depend on those theories:

> Survival of their cause does not rest upon either a tolling of the two-year time frame following the surgery or application of the doctrine of a continuing tort, the viability of which has been questioned in light of legislative changes.

Id. Rather, the Court held, the plaintiff's claim of failure to warn or give notice of the danger of the implants was "alleged to have occurred at three specific times: the time of surgery in 1986, the time of [a government] alert [about the implants] in December 1990, and the time of [the defendant's] examination of Mrs. Allen in 1992 or 1993." Id. at 757 (3). Even though the first two events were barred, the last alleged time that the surgeon failed to "advise her of any known or suspected health problems or hazards associated with the implants" was a separate act of negligence that commenced the running of, in that case, both the statute of limitation and the statute of repose.[3]

The doctors raise several arguments to suggest that the statute of repose should be construed to have begun to run at the time of their first alleged failure to warn Lyon. First, the doctors contend the claim is barred because this is a case of "misdiagnosis." They reason that Lyon already had a medical condition or disease — lack of a spleen — and that she has merely alleged that they failed to properly advise her regarding this condition on several occasions. They then apply case law holding that a misdiagnosis starts the running of the statute of limitation and multiple failures to diagnose do not constitute additional acts of negligence nor a continuing tort. *Frankel v. Clark*, 213 Ga. App. 222, 223 (444 SE2d 147) (1994). See also *Brahn v. Young*, 265 Ga. App. 705, 708 (595 SE2d 553) (2004); *Young v. Williams*, 274 Ga. 845, 847-848 (560 SE2d 690) (2002) (continuous treatment doctrine could not be used to alter statute of limitation in medical malpractice cases alleging misdiagnosis).

A critical flaw in this reasoning is that this line of misdiagnosis case law concerns the statute of limitation, which begins to run with

---

[3] See also *Stafford-Fox v. Jenkins*, 282 Ga. App. 667, n. 2 (639 SE2d 610) (2006) (plaintiff alleged separate claims of (1) misdiagnosis and (2) a correct diagnosis but a failure to inform of the consequences); *Herndon v. Ajayi*, 242 Ga. App. 193, 194 (2) (532 SE2d 108) (2000) (complaint that doctor was negligent in not informing patient of the significance of keeping the follow-up appointment and in failing to contact him afterward was a claim for malpractice); *Leon Jones Feed & Grain v. Gen. Business Svcs.*, 175 Ga. App. 569, 570 (333 SE2d 861) (1985) (annual failure to give same tax advice constitutes separate acts of negligence).

the occurrence *of an injury*. And in most misdiagnosis cases, the injury occurs at the time of the misdiagnosis. *Walker v. Melton*, 227 Ga. App. 149, 150 (1) (b) (489 SE2d 63) (1997). Thus, in those cases, subsequent misdiagnosis does not create a new cause of action because there is already a complete tort, i.e., a negligent act and injury. When the doctors in this case failed for the first time to advise Lyon about not having a spleen, no injury and no completed tort occurred. Accordingly, the misdiagnosis reasoning is not relevant here. The present case involves the statute of repose, which is triggered by an act of negligence, with or without injury. Thus, misdiagnosis case law is inapposite.[4]

Furthermore, the present case does not even involve a misdiagnosis. Lyon never consulted any of the defendants with symptoms of her injury (OPSI), and there is no evidence that she had it at the time. The doctors could not have diagnosed or misdiagnosed her condition. They also contend that the failure to warn Lyon about the ramifications of her asplenic condition is tantamount to a misdiagnosis. But, again, their failure to warn caused no immediate injury, which is what provides the basis for finding that no cause of action arises thereafter for repeating the same misdiagnosis.

The doctors argue that the more recent events of alleged negligence should be seen only as a failure to correct previous negligence, and the mere failure to correct a prior act of negligence is not a new act of negligence. See *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 806 (2) (273 SE2d 16) (1980). But the rule in *Jankowski* is that once a cause of action *accrues*, subsequent failure to lessen the effect of the earlier negligence is not a new act of negligence but rather "a failure to avoid the ultimate effect of the earlier breach and a failure to mitigate their own damages." Id. at 807 (2). In the present case, Lyon's cause of action did not accrue until she contracted OPSI. Prior to that she had no injury, and there was no damage to mitigate. Thus the doctors' later acts of failure to warn did not constitute a mere failure to correct a prior act of negligence.

The doctors also contend that support can be found based on the final outcome in *Williams v. Devell R. Young, M.D., P.C.*, 258 Ga. App. 821 (575 SE2d 648) (2002), by drawing a parallel with Lyon's claim that they failed to educate her about her asplenic condition. In the first appearance of *Williams* in this Court, the Court noted that in addition to her primary claim of negligence regarding dislocated bones in her foot, Young claimed that the doctor had "failed to

---

[4] "When an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered." *Whitaker v. Zirkle*, 188 Ga. App. 706, 708 (374 SE2d 106) (1988).

properly educate her about her diabetic condition." See *Williams v. Devell R. Young, M.D., P.C.*, 247 Ga. App. 337, 338 (543 SE2d 737) (2000). This Court's first opinion was reversed by the Supreme Court, which held that the continuous treatment doctrine could not be used to alter the statute of limitation. *Young v. Williams*, 274 Ga. 845. Following remand, this Court ruled that Young's claims were therefore barred by the statute of limitation. See *Williams v. Young*, 258 Ga. App. at 824. But the specific claim mentioned above was not discussed in the decision issued upon remand; nor does that decision necessarily dispose of the allegation. We therefore draw no conclusions from that decision about the issue before us.

The doctors also argue that *Belinfante*, mentioned above, is distinguishable because in that case the doctor received new information — the government warning about the implants — concerning the patient's condition, which he was required to disseminate to her. But this Court found that there was an issue of fact as to whether the doctor was aware of the new information at the time of the *second event* of failure to warn, which event *was* barred by the statute of limitation. *Belinfante*, 217 Ga. App. at 757 (3). Yet the claim involving the third event was not dismissed on the ground that the implant information was not new to the doctor at that point in time. The decision in *Belinfante* did not depend on the doctor receiving new information affecting the patient's care.

The doctors' reliance on *Eyzaguirre v. Baker*, 260 Ga. App. 53 (579 SE2d 47) (2003), is also misplaced. In that case, the court decision was based on a finding that the plaintiff knew or should have known of the alleged negligence more than five years prior to filing suit, and his claim was therefore barred by the statute of repose. Id. at 55 (1). With regard to the continuous treatment doctrine, this Court assumed without deciding that the Supreme Court's rejection of the doctrine's application to the statute of limitation meant that it also could not be applied to the statute of repose. At any rate, our opinion does not rely on that doctrine. Id.

Finally, the recent decision by the Supreme Court of Georgia in *Kaminer v. Canas* is, by its own terms, not controlling in this case. In *Kaminer*, the plaintiff alleged that two doctors had failed to diagnose his condition — AIDS — beginning in 1991 and 1993, respectively, and continuing thereafter, yet he did not file suit until 2001. *Kaminer*, 282 Ga. at 830. The Supreme Court first addressed whether the claims were barred by the two-year statute of limitation. Id. at 831-837 (1), (2). In so doing, the Court held that Canas was injured in 1991 and 1992, because in a case of misdiagnosis, "the plaintiff's 'injury' as used in OCGA § 9-3-71 (a) has long been confined to the original negligent diagnosis." Id. at 836.

The Court then addressed the application of the statute of repose and held that it had begun to run on the dates that the doctors committed their allegedly negligent acts or omissions and that it could not be tolled. *Kaminer*, 282 Ga. at 837-838 (3). But the Court went on, "However, the applicable dates are the same as those on which the statute of limitations started to run in 1991 and 1993, respectively, when the misdiagnoses were initially reached." Id. at 838 (3). This is so because the Court had already held that the only injuries in *Kaminer* occurred on those dates; and therefore the associated negligence was one-in-the-same event. The Supreme Court did not consider whether any subsequent acts of negligence were barred by the statute of repose because it only needed to address the acts of negligence associated with the completed torts alleged in the case. In other words, it only needed to address the acts of negligence *that were the proximate cause of the injury in that case*. Any subsequent acts of negligence resulted in no injury and were therefore not considered. Because Canas was injured by the doctors in 1991 and 1993, the corresponding acts of negligence were limited to that point in time or before, and they were more than five years old.

In the present case, there is no such limitation because there was no injury simultaneous to any of the repeated acts of negligence; it is not a misdiagnosis case like *Kaminer*. The injury came later, in September 2004. And the plaintiff has alleged that the injury was proximately caused by any or all of the doctors' omissions (their failures to inform) that occurred within, and only within, five years of when she filed suit.

In summary, the plaintiffs have alleged that Schramm, Barnes, and Sharon committed independent acts of negligence within the five years prior to suit. It was error to dismiss them. We therefore reverse that portion of the trial court's orders that granted their (and their practices') motions to dismiss.

Our holding does not nullify the intent of the General Assembly to abolish any medical malpractice action five years after the negligent conduct. Rather, we simply hold that under the facts of this case, the doctors' repeated incidents of failure to warn are separate acts of negligent conduct, some of which occurred within five years prior to her suit. Under the appellees' reasoning, doctors would be immunized from a recent failure to warn a patient just because they first breached their duty to warn more than five years ago. We find no support for this proposition.

*Judgment affirmed in part and reversed in part. Johnson, P. J., Ellington and Phipps, JJ., concur. Andrews, P. J., Blackburn, P. J., and Mikell, J., concur in part and dissent in part.*

ANDREWS, Presiding Judge, concurring in part and dissenting in part.

Betty Lyon filed a medical malpractice action on August 29, 2006, alleging that, during the course of her treatment by Joseph H. Barnes, M.D., Thomas E. Sharon, M.D., and C. Steven Schramm, M.D., all three physicians knew or should have known that she did not have a spleen,[5] and that they negligently failed to advise her about the risk of an overwhelming post-splenectomy infection (OPSI) she faced as a result of living without a spleen and the preventative measures she could have taken to reduce the risk.[6] Ms. Lyon alleged that, without this knowledge, she "lived with an avoidably high risk" of contracting OPSI, and that beginning in September 2004, she eventually developed OPSI and ensuing complications that resulted in amputation of parts of her arms and legs. Ms. Lyon's husband joined in the action asserting a loss of consortium claim.

All three physicians moved for dismissal on the basis of the statute of repose in OCGA § 9-3-71 (b), which provides that "in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred." Ms. Lyon contends that each physician negligently failed to advise her during courses of treatment given to her by Dr. Barnes from December 1997 to September 2004; by Dr. Sharon from March 1999 to September 2004; and by Dr. Schramm from May 2000 to September 2004. Because Ms. Lyon's August 2006 medical malpractice action for injury arising from the alleged negligence was filed more than five years after the occurrence of the first alleged negligent omission by each physician, the trial court correctly found that the action against all three physicians was barred by the five-year statute of repose in OCGA § 9-3-71 (b). *Kaminer v. Canas*, 282 Ga. 830, 837-838 (653 SE2d 691) (2007).

In *Kaminer*, the Supreme Court reversed this Court's decision in *Canas v. Al-Jabi*, 282 Ga. App. 764, 776-777 (639 SE2d 494) (2006), rev'd, *Kaminer*, supra, which dealt with the operation of the five-year statute of repose in OCGA § 9-3-71 (b) in a similar claim based on serial medical negligence by two physicians (repeated misdiagnosis), which occurred over the course of treating a patient with an underlying AIDS condition. Dr. Kaminer's course of treatment began

---

[5] The record shows that Ms. Lyon had her spleen surgically removed in 1982 at the age of 18 as a result of injuries she suffered in an automobile accident.

[6] The professional corporation that employed Dr. Barnes and Dr. Sharon, and the professional corporation that employed Dr. Schramm were also named as defendants on the basis that they were liable under the principle of respondeat superior for the alleged malpractice of the physician employees.

in May 1991 and ended when she last saw the patient on February 15, 2001, and Dr. Al-Jabi's course of treatment began in May 1993 and ended when he last saw the patient on March 15, 2000. *Kaminer*, 282 Ga. at 830; *Al-Jabi*, 282 Ga. App. at 768-769. In a medical malpractice action filed on December 18, 2001, the patient alleged injury as a result of repeated acts of negligent failure to diagnose the AIDS condition over the course of treatment by each physician. *Kaminer*, 282 Ga. at 830. The Supreme Court held that the five-year period of repose commenced to run from the first act of negligence (misdiagnosis) by each physician, not from subsequent negligent acts occurring during the course of treatment. Id. at 837-838. Accordingly, when the Supreme Court held that "the statute of repose . . . has run on [the patient's] claim for the negligent failure to diagnose his AIDS condition," the Court ruled that expiration of the five-year repose period abolished the entire cause of action, including negligent omissions by the physicians that occurred when they saw the patient within five years of the date the action was filed. Id. at 838. Moreover, in approving a portion of the analysis in the *Al-Jabi* opinion, *Kaminer* held that this Court correctly found "that the commencement of that five-year period of limitation [in OCGA § 9-3-71 (b)] was not tolled until such time as [the physicians] ceased to occupy the status of treating physicians. *Canas v. Al-Jabi*, supra at 776-778 (1) (a)." *Kaminer*, 282 Ga. App. at 838. As we noted in *Al-Jabi* on this point,

> if the General Assembly intended for the medical malpractice statute of repose to abrogate only those medical malpractice actions filed more than five years after the date on which the negligent or wrongful act or omission occurred *and* more than five years after the date on which treatment by the health care provider ended, it could have so provided.

(Emphasis in original.) *Al-Jabi*, 282 Ga. App. at 776.

The five-year statute of repose in OCGA § 9-3-71 (b) runs from the alleged negligent act, is not tolled for any reason, and abolishes a cause of action after expiration of the limitation period whether or not an injury has occurred and the cause of action has accrued. *Simmons v. Sonyika*, 279 Ga. 378, 380 (614 SE2d 27) (2005); *Wright v. Robinson*, 262 Ga. 844, 845 (426 SE2d 870) (1993). Because the statute of repose expired as to all three physicians before the medical malpractice action was filed, the trial court correctly dismissed all three physicians from the malpractice action (and from the derivative loss of consortium claim), and correctly dismissed the physicians' professional corporations from the malpractice action (and from the derivative loss of consortium claim) to the extent the claims

against the corporations were based on vicarious liability for the alleged malpractice of the physicians.

I agree with the majority opinion to the extent it affirms portions of the trial court's order denying dismissal to other defendants in the action not involved in this appeal.

For these reasons, I respectfully concur in part and dissent in part.

I am authorized to state that Presiding Judge Blackburn and Judge Mikell join in this opinion.

DECIDED MARCH 27, 2008 —
RECONSIDERATION DENIED APRIL 11, 2008 

*Ragland & Jones, Daniel A. Ragland,* for appellants.

*Greenberg Traurig, Thomas J. Mazziotti, John B. Merchant III, Fain, Major & Brennan, Richard W. Brown, Peters & Monyak, Jonathan C. Peters, Jeffrey S. Bazinet,* for appellees.