A08A2227. JOHN E. KING AND ASSOCIATES et al.
v. TOLER et al.
A08A2228. ARROWHEAD CLINIC, INC. et al. v. TOLER et al.
A08A2229. BROWN v. TOLER et al.
A08A2230. H. BROWN MANAGEMENT COMPANY et al.
v. TOLER et al.
(675 SE2d 492)

ANDREWS, Presiding Judge.

Plaintiffs Christy Toler, Brenda Green, and Joyce Green[1] brought this complaint against numerous defendants associated with the King Law Firm and the Brown/Arrowhead chiropractic clinics, on behalf of themselves and all those persons who

> have formerly been treated at chiropractic clinics affiliated with the Arrowhead Clinic, Incorporated, Arrowhead Management, Inc., Brown Enterprises, Inc., Harry W. Brown, Inc., Harry W. Brown, Sr., Harry W. Brown, Jr., and who entered attorney client contracts with Defendant John E. King and/or John E. King and Associates, LLC, since January 1, 2004.

The trial court granted plaintiffs' motion for class certification and defendants appealed. For the following reasons, we reverse.

In their complaint, plaintiffs alleged that King and the King Law Firm together with the Brown entities had devised a scheme through which patients of Brown were improperly referred as clients to the King firm. Specifically, when a patient scheduled an appointment at one of the Brown clinics for problems associated with a car accident or other tort, Brown would contact the King firm and a representative from the firm would come to the clinic at the time of the patient's appointment and meet with the patient either before or after the patient saw the chiropractor. The patient would be given an attorney-client contract entitling the attorney to a contingency fee interest and granting the attorney the right to pay the client's medical expenses. The complaint also alleged that the chiropractic staff would inform the patient that a prolonged course of treatment was necessary and, if the patient did not come for all of the treatments, the patient would not be able to recover for her injuries and would be responsible for the cost of the treatments.

The complaint further alleged that the meetings with the King firm were scheduled without the patient's knowledge or consent for the purpose of inducing the patient to pursue legal action, and also

---

[1] Plaintiffs subsequently dropped Brenda Green from the suit and added Stephanie Jung-Nash.

YALE LAW LIBRARY

alleged that the business relationship between the King firm and the Brown clinics was not disclosed to the patient/client.

The claims brought by the complaint were for professional negligence against King for wrongfully soliciting clients within the confines of a medical office, and for wrongfully requiring the client to sign a contract authorizing the King firm to pay all the medical expenses of the Brown clinics, thus serving the interests of Brown over that of the clients; professional negligence against the Brown clinics for unauthorized disclosure of private information and "over utilization" of chiropractic services through providing a level of treatment which was not warranted by the patient's medical condition; negligence against all defendants in that the Brown clinic had a duty to protect its patients and respect their privacy and the King firm had a duty to ensure that their clients were adequately represented and also had a duty not to solicit or harass potential clients; breach of fiduciary duty; and, fraud/constructive fraud against all defendants in that the Brown clinics and the King firm had a fee-sharing arrangement that was not disclosed to the patients/clients.

In analyzing the above claim for class certification, we note that plaintiffs have the burden of establishing their right to class certification. We review the trial court's decision in certifying or refusing to certify a class action for abuse of discretion. *Jones v. Douglas County*, 262 Ga. 317, 323-324 (418 SE2d 19) (1992).

The statute pertaining to the certification of class actions is OCGA § 9-11-23, which provides:

(a) One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) The class is so numerous that joinder of all members is impracticable; (2) There are questions of law or fact common to the class; (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) The representative parties will fairly and adequately protect the interests of the class.

(b) An action may be maintained as a class action if the prerequisites of subsection (a) of this Code section are satisfied, and, in addition: (1) The prosecution of separate actions by or against individual members of the class would create a risk of: (A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or (B) Adjudications with respect to individual members of the class which would as a practical

matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) The difficulties likely to be encountered in the management of a class action.

In determining the propriety of a class action under the above statute,

the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits but whether the requirements of OCGA § 9-11-23 (a) have been met. But the U. S. Supreme Court has recognized that the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.

(Citations and punctuation omitted.) *McGarry v. Cingular Wireless, LLC*, 267 Ga. App. 23, 25 (599 SE2d 34) (2004).

In looking at the claims of the class representatives in this case, we note that the record shows that the named plaintiffs all testified that they were aware of a relationship between the clinics and the law firm. Further, none of the named plaintiffs was able to articulate any injury received from either the clinic or law firm. Stephanie Jung-Nash testified that she went to the clinic after an automobile accident but was worried that she could not pay the bills because she had no insurance. The clinic told her that she could talk to a lawyer who would handle the fees. Jung-Nash met with a representative of the King Law Firm at the clinic and signed an agreement with them.

Jung-Nash was treated by the clinic, received physical therapy

YALE LAW LIBRARY

and other treatments, and said that the treatments helped her and she got better as a result of the treatments. Jung-Nash acknowledged that she received a settlement of $5,600 on her legal claim and the King Law Firm took $1,180, which was less than the agreed-upon one third contingency fee, and also did not charge for any expenses. Jung-Nash also acknowledged that the clinic wrote off part of her bill. Jung-Nash, when asked what she did not like about the handling of her case, said that she did not feel comfortable not talking to a lawyer when she signed the agreement and speaking with a lawyer only one time while her case was pending.

Christy Toler stated that she went to the clinic after an accident but did not have any insurance and had no way to pay for the treatment. She said that she met with a King Law Firm representative and signed a contract with the law firm. Toler later terminated the agreement with the King Law Firm and went to another lawyer and another doctor. She never paid the clinic any money for the treatment she received, nor did she pay the King firm any money. Toler claimed that she was harmed because she had to drive a long way to the clinic, but admitted that she went there because her mother had "heard good things about them." Toler also stated that the treatment did make her better. Toler admitted that although she claimed that the agreement with the firm was that the law firm would get a third, she would get a third, and the clinic would get a third, the agreement she signed only provided that the law firm would receive one-third of any recovery.

Joyce Green testified that when she went to the clinic she saw a chiropractor first before she talked to the law firm representative. Green said she had no problem with her treatment at the chiropractic clinic and she had no concerns about the amount of the bill that was paid from the settlement proceeds. Green acknowledged that part of the clinic's bill had been written off. She also stated that she was satisfied with the services of the law firm. She acknowledged that the law firm took less than a third of the settlement, the amount that was specified in the contract. The only complaint that Green could articulate was that she thought the law firm should have paid her other medical bills out of the settlement. She acknowledged that the bills would have been paid out of the settlement money and that it made no difference in the amount she would receive, but felt that the law firm should have subtracted the money and paid the bills before sending her the check. When asked: "Do you have any understanding at all of how you were harmed by anything that any of the defendants did in this case," she answered "No. I don't — no."

Defendants argue, inter alia, that the trial court erred in certifying the class because the class representatives have shown no injury, the commonality requirement has not been met, and each

claim will require a great deal of individualized proof, thus making the class unmanageable. Because we conclude that plaintiffs have failed to meet OCGA § 9-11-23 (b) (3)'s requirements that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, we need not address defendants' other enumerations of error.

Before claims can be certified for class adjudication under OCGA § 9-11-23 (b) (3), the plaintiff must show, among other things, "that there are questions of law and fact common to the class members which predominate over any individual questions." *Griffin Indus. v. Green*, 280 Ga. App. 858, 859 (635 SE2d 231) (2006).

> Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief. Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23 (b) (3).

(Citation and punctuation omitted.) *Rollins, Inc. v. Warren*, 288 Ga. App. 184, 187 (653 SE2d 794) (2007).

In this case, the trial court erred in certifying the class because the class action is not superior to other available methods for the fair and efficient adjudication of this controversy. Liability and damages cannot be determined on the basis of the class representatives' experiences with the clinic and law firm.

In response to defendants' contention that the class representatives have shown no damages, appellees do not point to any evidence of damages, but rather respond that at this stage the plaintiffs are not required to show that they will ultimately prevail on their claims, citing *Taylor Auto Group v. Jessie*, 241 Ga. App. 602, 604 (527 SE2d 256) (1999). Plaintiffs also contend that everyone in the class has the same claim for breach of fiduciary duty and they may recover nominal damages for this claim. But, plaintiffs must still show some injury to prevail on a breach of fiduciary duty claim. See *Willett v. Russell M. Stookey, P.C.*, 256 Ga. App. 403, 411-412 (568 SE2d 520) (2002). See also OCGA § 51-12-4: "Damages are given as compensation for injury; generally, such compensation is the measure of damages where an injury is of a character capable of being estimated

in money. If an *injury* is small or the mitigating circumstances are strong, nominal damages only are given." (Emphasis supplied.)

Here, although the record is well-developed, the named plaintiffs have as yet identified no injuries, however small, from either the breach of fiduciary duty claim or the other claims listed in the complaint. Whether other members of the class could do so would have to be determined on an individualized basis. Accordingly, proof as to each claim would necessarily require evidence of each class member's treatment at the clinic, the charges for that treatment, the amount of settlement obtained by the law firm, the adequacy of the settlement, and the amount paid to the clinic out of that settlement.

Because each claim would have to be determined on an individual basis, there are no common questions of law or fact which predominate over any common issues shared by the putative class. See *R. S. W. v. Emory Healthcare*, 290 Ga. App. 284, 287 (659 SE2d 680) (2008). Therefore, plaintiffs have not shown that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. OCGA § 9-11-23 (b) (3). It follows that the trial court erred in certifying the class action.

*Judgment reversed. Bernes and Doyle, JJ., concur in the judgment only.*

DECIDED FEBRUARY 25, 2009 —
RECONSIDERATION DENIED MARCH 12, 2009 — ▮▮▮▮▮▮▮▮

*Savage, Turner, Pinson & Karsman, Brent J. Savage, Stanley M. Karsman, Kathryn H. Pinckney, Steven E. Scheer,* for Toler et al.

*Oliver & Maner, Timothy D. Roberts, Patrick T. O'Connor, Weiner, Shearouse, Weitz, Greenberg & Shawe, Malcolm Mackenzie III,* for John E. King & Associates et al.

*Bouhan, Williams & Levy, Roy E. Paul,* for Arrowhead Clinic, Inc., Arrowhead Management, Inc., and Harry W. Brown, Inc.

*Chorey, Taylor & Feil, Ruth W. Woodling,* for Harry W. Brown, Sr.

*Gannam, Gnann & Steinmetz, Christian J. Steinmetz III,* for H. Brown Management Co. and Harry W. Brown, Jr.

*Alston & Bird, James C. Grant,* for Arrowhead Clinic, Inc., Arrowhead Management, Inc., Harry W. Brown, Inc., H. Brown Management Co., LLC, Harry W. Brown, Sr., and Harry W. Brown, Jr.