A11A2133. RITE AID OF GEORGIA, INC. v. PEACOCK et al.
(726 SE2d 577)

ANDREWS, Judge.

On appeal from the certification of a class in this action arising from its sale of customers' medication information to another pharmacy, Rite Aid of Georgia, Inc. argues that the evidence does not support the trial court's determination that plaintiff Richard Peacock and the class he seeks to represent meet the requirements of OCGA § 9-11-23 (a) and (b) (3). We agree and therefore reverse.

Plaintiffs have the burden of establishing their right to class certification, and we review the trial court's decision in certifying or refusing to certify a class action for an abuse of discretion. *Jones v. Douglas County*, 262 Ga. 317, 323-324 (418 SE2d 19) (1992).

Although "we will not reverse the factual findings in a trial court's class certification order unless they are clearly erroneous," *Village Auto Ins. Co. v. Rush*, 286 Ga. App. 688 (649 SE2d 862) (2007), the facts relevant to this appeal are not in dispute. In anticipation of closing its Swainsboro pharmacy, and because the nearest other Rite Aid location was more than 40 miles away, Rite Aid sold the prescription records of more than 4,000 of its customers to a nearby Walgreens on August 27, 2008. Between August 16 and August 19, Rite Aid placed signs at the pharmacy entrance and on its counter to the effect that the Swainsboro location was closing and that all prescription information would be transferred to Walgreens. After the Swainsboro Rite Aid closed, Walgreens placed signs there and sent letters to Rite Aid customers regarding their ability to fill prescriptions at Walgreens.

On August 19, 2008, Richard Peacock, a detective with the Swainsboro Police Department, went to the Swainsboro Rite Aid to pick up a prescription for his wife. Employees informed Peacock that the store was closing and that his prescriptions would be transferred to Walgreens. Ten days later, and two days after the Swainsboro Rite Aid closed, Peacock went to Walgreens to fill a prescription. The Walgreens clerk had trouble opening Peacock's prescription information and informed Peacock that he would need to go back to his doctor for a new prescription. Peacock refused, telling the clerk that "[t]he prescriptions were up to date" and were "sent to you from Rite Aid." Walgreens resolved the problem, and Peacock received his prescription that day.

In February 2010, Peacock filed this action for breach of duty, breach of contract, and unjust enrichment in Emanuel County Superior Court, later amending his complaint to render it a class action. In April 2011, the trial court certified the class as consisting of "[a]ll Georgia residents who were customers of [Rite Aid's] pharmacy in Emanuel County and whose pharmacy records were transferred by [Rite Aid] to Walgreens in 2008," but excluding "any employees of [Rite Aid] and any employees of the Superior Court of Emanuel County." On appeal, Rite Aid argues that the trial court erred when it found that the class had sufficient commonality, typicality, and adequacy of representation as required by OCGA § 9-11-23 (a) (2), (3), and (4), as well as the suitability required by OCGA § 9-11-23 (b) (3).

1. OCGA § 9-11-23 provides:

> (a) One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) [t]he class is so *numerous* that joinder of all members is impracticable; (2) [t]here are *questions of law or fact common* to the class; (3) [t]he claims or defenses of the representative parties are *typical* of the claims or defenses of the class; and (4) [t]he representative parties will fairly and *adequately protect the interests* of the class.

(Emphasis supplied.) In determining whether a class action should proceed under OCGA § 9-11-23, "the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits but whether the requirements of OCGA § 9-11-23 (a) have been met." *McGarry v. Cingular Wireless*, 267 Ga. App. 23, 25 (599 SE2d 34) (2004). When necessary, we look to federal as well as Georgia case law for guidance concerning the propriety of a class certification. *Sta-Power Indus. v. Avant*, 134 Ga. App. 952, 953-954 (216 SE2d 897) (1975).

The United States Supreme Court has recently explained the burden of proof facing a class representative as follows:

> A party seeking class certification must affirmatively demonstrate his compliance with [Federal Rule of Civil Procedure 23 (a)] — that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc. We [have] recognized . . . that sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial

court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 (a) have been satisfied. . . . Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. *The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.* Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, e.g., jurisdiction and venue, is a familiar feature of litigation.

(Emphasis supplied.) *Wal-Mart Stores v. Dukes*, ___ U. S. ___, ___ (II) (A) (131 SC 2541, 180 LE2d 374) (2011).

(a) *Commonality.* As *Dukes* also noted, "any competently crafted class complaint literally raises common questions." (Citation and punctuation omitted.) *Dukes*, 131 SC at 2551. Thus the Supreme Court of Georgia has held that where federal regulations authorized the sending of junk faxes to some but not all recipients having an "established business relationship" with the sender, a trial court properly denied class certification for lack of commonality. *Carnett's, Inc. v. Hammond*, 279 Ga. 125, 129 (4) (610 SE2d 529) (2005). The *Carnett's* Court rejected plaintiffs' assertion that a common question existed as to whether the solicitation by fax was wrongful:

[A] *common question is not enough when the answer may vary with each class member* and is determinative of whether the member is properly part of the class. . . . [T]he question of solicitation is *both a merits question and a class question*, and thus the trial court acted within its discretion in reaching it.

(Emphasis supplied.) 279 Ga. at 129 (4).

Thus a plaintiff seeking to represent a class must do more than draft a complaint; instead, he must show "that the class members 'have *suffered the same injury*,' [which] *does not mean merely that they have all suffered a violation of the same provision of law.*" (Emphasis supplied.) *Dukes*, 131 SC at 2551, quoting *Gen. Telephone Co. &c. v. Falcon*, 457 U. S. 147, 157 (102 SC 2364, 72 LE2d 740) (1982). This Court has likewise held that a class not sharing a common injury is not properly certified. In *Doctors Hosp. Surgery Center v. Webb*, 307 Ga. App. 44 (704 SE2d 185) (2010), for example, we reversed a trial court's certification order concerning plaintiffs' action for breach of contract, rescission, and negligence because the proposed class — patients arguably affected by a hospital's failure to sterilize the

instruments used in its colonoscopies — could not show that common injuries predominated over individualized ones. Id. at 48-49 (2); see also *John E. King & Assoc. v. Toler*, 296 Ga. App. 577, 578 (675 SE2d 492) (2009) (physical precedent only) (reversing certification of class pleading common injury from a chiropractic clinic's referral of class members to personal injury attorneys on the ground that no injury resulting from the referral had been shown).

With these precedents in mind, we turn to the question whether the facts of this case present sufficiently common questions of fact and law as to whether Rite Aid committed any legally cognizable wrong when it sold the pharmacy records to Walgreens.

(i) *Lack of Injury.* Under OCGA § 26-4-80 (d), and although medication records are defined as "confidential," they may be released without the patient's written consent to parties including the patient, his prescribing doctor or other licensed practitioners, and "another licensed pharmacist." See also OCGA § 26-4-5 (5) (defining "confidential information" as including medication records which "may be released only to the patient or, as the patient directs," to other professionals where, "in the pharmacist's professional judgment, such release is necessary to protect the patient's health and well-being"); Ga. Comp. R. & Regs. r. 480-16-.07 (d) (4) (medication records may be released to "[a]nother licensed pharmacist *for purposes of transferring a prescription* or as a part of a patient's drug utilization review, or other patient counseling requirements"). The trial court held without explanation that Rite Aid's "single transaction" of selling its customers' medication information to Walgreens resulted in "a common impact" on each class member.

Pretermitting whether the sale here violated the statutes quoted above or any other law, Peacock's deposition testimony makes clear that although he felt that the sale of his prescription information to Walgreens was "illegal," *he could not say that he had suffered any actual financial or physical injury*, including to his professional or personal reputation, as a result of that sale. Peacock also admitted that given his family's medical needs, including his own continuing prescriptions for the antidepressants Xanax and Zoloft, he had chosen and might well continue to choose Walgreens as the only practical replacement for the closed Swainsboro Rite Aid.

This undisputed testimony establishes that even if the sale to Walgreens amounted to a violation of law, and whatever other plaintiffs might have suffered as a result, Peacock himself has suffered no injury from that sale. Peacock can only speculate that criminals he has had a hand in apprehending may associate with a Walgreens employee having access to his prescription information, given the absence of evidence that a Walgreens employee has harmed

him or a member of his family by misuse of that information. Nor does it suffice to assert that the class may be able to recover nominal damages for breach of contract or fiduciary duty. Any contractual duty Rite Aid may have owed these class members would be based not on a single contract, but on some unspecified amalgam of the interactions between Rite Aid and each class member, including any privacy guidelines circulated to them, in the context of relevant statutes and regulations. As this Court held in *Willett v. Russell M. Stookey, P.C.*, 256 Ga. App. 403 (568 SE2d 520) (2002), moreover, "some injury is necessary to show even nominal damages for a breach of fiduciary duty." Id. at 411 (7); see also *Conner v. Hart*, 252 Ga. App. 92, 93-94 (1) (a) (555 SE2d 783) (2001) (affirming grant of directed verdict on breach of fiduciary duty claim where plaintiff had failed to show "actual damage" or any other injury).

(ii) *Individualized Wrongs and Defenses.* As we have already suggested, Georgia appellate courts have refused to condone the certification of a class when the circumstances surrounding a member's actual response to the defendant's allegedly wrongful act could vary widely. See *Carnett's*, 279 Ga. at 130 (5) (noting other jurisdictions' determinations that "individual questions of whether fax recipients gave their oral or written permission rendered class certification inappropriate" regardless of the business relationship between the parties); *Peck v. Lanier Golf Club*, 304 Ga. App. 868, 872 (1) (697 SE2d 922) (2010) (affirming denial of motion for class certification as to golf course closure when plaintiffs' purchases of their land lots "arose out of multiple projects by different developers and resulted in different subdivisions with separate sections").

When Peacock admits that he demanded that the neighboring Walgreens fill his prescription on his first visit there with the information sold to it by Rite Aid and that he has continued to use Walgreens to fill his prescription needs, he raises a substantial possibility that Rite Aid may defeat the action by asserting that Peacock waived or ratified the sale at issue. Peacock's contradictory response to that sale — protesting its wrongfulness, but insisting that Walgreens fill his prescription nonetheless — also highlights his failure to prove that any or most other class members share not only his apparent outrage concerning the sale of the prescription information but also his tacit acceptance of that event. See *Carnett's*, 279 Ga. at 130 (6) (rejecting a request to remand case for further discovery when plaintiff had "relied on her argument" that an established business relationship existed between all parties); *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 FRD 677, 682-683 (II) (B) (2) (S.D. Fla. 2008) (finding no commonality when the leading issue presented by the motion to certify was whether defendant's invoices "[were] deceptive

to [a] particular plaintiff"); *Brenntag Mid South v. Smart*, 308 Ga. App. 899, 904-905 (2) (a) (iii) (710 SE2d 569) (2011) (refusing to certify one of three representatives as typical when she had previously signed a release concerning the claim at issue in the class action).

Finally, and to the extent plaintiffs are claiming that Rite Aid committed the tort of unauthorized disclosure of medical information, we repeat two observations already made: that there is no evidence in the record before us of any "public" disclosure of Peacock's data, and that such cases are bound to turn on individual rather than common questions. See *Haughton v. Canning*, 287 Ga. App. 28, 30 (3) (650 SE2d 718) (2007) (affirming a doctor's motion for directed verdict when plaintiff could not show that the defendant doctor's sharing of medical information with other physicians amounted to a "public" and thus wrongful disclosure).

(b) *Typicality and Adequacy*. As the United States Supreme Court has noted, "[t]he commonality and typicality requirements of [Federal] Rule 23 (a) tend to merge." *Gen. Telephone Co. &c. v. Falcon*, supra, 457 U. S. at 157, n. 13. Given Peacock's failure to prove that his response to the closing of the Swainsboro Rite Aid was shared by other members of the class, we do not share the trial court's confidence in his status as a "typical" class representative as required by OCGA § 9-11-23 (a) (3). In the very recent case of *In re Fla. Cement and Concrete Antitrust Litigation*, 278 F.R.D. 674 (S.D. Fla. 2012), for example, the federal district court ruled that class representatives who had not suffered any actual "impact" from a defendant's alleged price-fixing conspiracy failed to satisfy the typicality requirement of Federal Rule 23. Id. at 681. Given Peacock's lack of actual injury, moreover, he is unlikely to "vigorously litigate the action on behalf of the class," just as it follows from his atypical position that he "cannot adequately prosecute the action." Id.

For the above reasons, we conclude that the trial court erred when it found that Peacock and the proposed class of Swainsboro Rite Aid customers shared common questions of law and fact and that Peacock was a sufficiently typical representative of that class under OCGA § 9-11-23 (a) (2) and (a) (3).

2. Given our holding in Division 1, we need not reach Rite Aid's remaining contentions.

*Judgment reversed. Mikell, P. J., Dillard and Boggs, JJ., concur. Barnes, P. J., Phipps, P. J., and McFadden, J., dissent.*

PHIPPS, Presiding Judge, dissenting.

I believe that the trial court did not abuse its discretion in finding that, for purposes of OCGA § 9-11-23 (a), Peacock and the class of Swainsboro Rite Aid customers shared common questions of law and

fact and that Peacock was a sufficiently typical representative of the class. Accordingly, I disagree with the majority that the trial court erred in so finding.

Peacock's breach of duty, breach of fiduciary duty, breach of contract, and unjust enrichment claims are based on Rite Aid's alleged duty to protect the confidentiality of the class members' pharmacy records. He claims that Rite Aid breached that duty by selling those records to Walgreens without Peacock's and the class members' written consent. "What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."[1]

The class members, whose prescriptions were sold in a single transaction, were similarly situated both factually and legally insofar as, for example, the application of the statutes and regulations governing the confidentiality and the transfer of pharmacy records to that discreet sale.[2] Whether Rite Aid did or did not violate statutory and common law in selling the records can provide common answers needed to resolve the litigation.[3] The majority, however, concludes that because (i) Peacock could not show that he suffered any actual financial or physical injury and (ii) there were individualized wrongs and defenses, the evidence did not present sufficiently common questions of fact and law as to whether Rite Aid committed any legally cognizable wrong when it sold the pharmacy records to Walgreens. The majority also concludes that the trial court erred in finding that Peacock was a sufficiently typical representative of the class.

"One or more members of a class may sue or be sued as representative parties on behalf of all only if . . . (2) There are questions of law or fact common to the class."[4] As recognized by the majority,

---

[1] *Wal-Mart Stores v. Dukes*, ___ U. S. ___, ___ (II) (A) (131 SC 2541, 180 LE2d 374) (2011) (citation and punctuation omitted).

[2] See OCGA § 26-4-80 (d); Ga. Comp. R. & Regs. r. 480-16-.07 (d) (4). Of course, "[a]ny assertion that the named plaintiff cannot prevail on [his] claims does not comprise an appropriate basis for denying class certification." *Village Auto Ins. Co. v. Rush*, 286 Ga. App. 688, 692 (2) (649 SE2d 862) (2007) (citation and punctuation omitted).

[3] Peacock takes the position that its unjust enrichment claim does not necessarily turn on a violation of a legal or contractual duty in selling the records, but whether it would be inequitable for Rite Aid to profit from the sale. But Rite Aid's conduct can provide common answers to this question as well. See, e.g., *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 721 (698 SE2d 19) (2010) (class action plaintiff contended insurer unjustly enriched itself when it made no effort to determine when unearned premiums were owed and to repay the same); *Fortis Ins. Co. v. Kahn*, 299 Ga. App. 319, 320 (683 SE2d 4) (2009) (affirming class certification for claims including unjust enrichment).

[4] OCGA § 9-11-23 (a).

Peacock must show that the class members suffered the same injury.[5] But even assuming that Peacock was unable to point to any actual financial or physical injury arising from the sale of his pharmaceutical information,[6] "[t]he law infers some damage from the tortious invasion of rights and allows nominal damages when there is no evidence of a particular loss to vindicate the rights of the plaintiff."[7] Further, the Plaintiffs allege the unlawful disclosure of confidential pharmaceutical records *for money*. "[B]reach of fiduciary duty negates the unfaithful agent's right to any compensation. . . ."[8] Thus, Peacock showed a single transaction that, if unlawful, would result in an injury common to all class members.

Nor do individualized wrongs or defenses necessarily preclude certification of the class. "[A]s long as the common questions predominate, a class may be certified even if some individual questions of law or fact exist."[9] As the trial court found, Rite Aid did not obtain written authorization from Peacock or other customers agreeing to the sale of the pharmacy records to Walgreens. It is Peacock's contention that the statutes, regulations, and documents upon which Rite Aid's alleged duties rest prohibit the release of confidential pharmaceutical information without prior written consent.[10] Thus, unlike *Carnett's, Inc. v. Hammond,*[11] or *Perez v. Atlanta Check*

---

[5] *Dukes*, supra, ___ U. S. at ___.

[6] The conclusion that Peacock could show no injury at all from the sale of confidential medical records, no matter how slight, is also inconsistent with the importance of the duties Rite Aid is alleged to have breached. See, e.g., *Sletto v. Hosp. Auth. &c.*, 239 Ga. App. 203, 205 (1) (521 SE2d 199) (1999) (noting that "[t]his case is not simply an action concerning the emotional consequences on a plaintiff arising out of a defendant's alleged commission of a negligent tort [but] involves the unauthorized release of psychiatric records," and "to refuse summarily to hold [defendants] accountable for their actions might encourage even more carelessness in the future").

[7] *Land v. Boone*, 265 Ga. App. 551, 554 (594 SE2d 741) (2004) (citations omitted). In addition, we recognized in *Land* that "to sue a tortfeasor to bring the defendants to public approbation and penitence by an adverse verdict for nominal damages has long been part of our common law." Id. at 553. See also OCGA § 13-6-6 ("In every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action."); *King v. Brock*, 282 Ga. 56, 57 (646 SE2d 206) (2007) ("Nominal damages come into play when an injured party establishes a breach of contract, but is unable to prove actual damages."); *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 202 (50 SE 68) (1905) (special damages are not required to recover for breach of privacy).

[8] *Vinson v. E.W. Buschman Co.*, 172 Ga. App. 306, 309-310 (1) (323 SE2d 204) (1984).

[9] *Rush*, supra at 691 (1).

[10] For example, Peacock points to Rite Aid's "Notice of Privacy Practices," which provide that "we will obtain your written Authorization before using or disclosing protected health information" other than for certain listed and authorized purposes.

[11] 279 Ga. 125 (610 SE2d 529) (2005).

*Cashers*,[12] Rite Aid's liability, should the transfer of the records without written consent be found unlawful, does not require an individualized inquiry into the class members' relationship to Rite Aid or suggest that there is a need to investigate whether each class member did or did not appropriately consent to the transfer of the pharmacy records.

The majority also concludes that the claims and defenses of Peacock are not typical of the claims and defenses of the class. "The typicality requirement under OCGA § 9-11-23 (a) is satisfied upon a showing that the defendant committed the same unlawful acts in the same method against an entire class."[13] Peacock has alleged that Rite Aid wronged the members of the class in the same way by unlawfully selling their pharmacy records in a single transaction, and so Peacock is a typical member of the class in that respect.[14] As the majority points out, Peacock also continued to use Walgreens to fulfill his prescription needs following the sale while simultaneously insisting that Rite Aid's sale of his prescriptions to Walgreens was wrongful. If Peacock's conduct raises the possibility that he ratified or waived his objections to the sale at issue, it is not clear that his conduct was atypical of the class. Furthermore,

> although a defense may arise and may affect different class members differently, this occurrence does not compel a finding that individual issues predominate over common ones. So long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification.[15]

Thus, while Peacock has shown that he is typical of the class members insofar as his claims, Rite Aid does not point to evidence that "any potential defenses would yield a different result for any class member *other than* [Peacock]."[16] Should Rite Aid later show that Peacock is not typical of the class because of Rite Aid's waiver and ratification defense, or that individualized questions may predominate in light of

---

[12] 302 Ga. App. 864 (692 SE2d 670) (2010).

[13] *Liberty Lending Svcs. v. Canada*, 293 Ga. App. 731, 738 (1) (b) (668 SE2d 3) (2008) (citation and punctuation omitted).

[14] *Davis v. Northside Realty Associates*, 95 FRD 39, 43 (N.D. Ga. 1982) ("[s]ince all plaintiffs must establish the same basic elements to prevail and since there are no differences as to the type of relief sought or the theories of liabilities upon which plaintiffs are proceeding, the typicality requirement is met").

[15] *Fortis Ins. Co.*, supra at 324 (2) (c).

[16] Id. (emphasis in original).

Rite Aid's affirmative defenses,[17] the trial court is free to revisit the issue. "It bears emphasis that certification orders are 'inherently tentative,' and the trial court retains jurisdiction to modify or even vacate them as may be warranted by subsequent events in the litigation."[18] But the record does not establish an abuse of discretion by the trial court in finding that Peacock was a typical member of the class.

For these reasons, I respectfully dissent.

I am authorized to state that Presiding Judge Barnes and Judge McFadden join in this dissent.

DECIDED MARCH 22, 2012 —
RECONSIDERATION DENIED APRIL 12, 2012 — 

*Alston & Bird, Andrew J. Tuck, James C. Grant, Drew, Eckl & Farnham, Stevan A. Miller*, for appellant.

*Hamilton & Maddox, Lance J. Hamilton, Bell & Brigham, John C. Bell, Leroy W. Brigham*, for appellees.

---

[17] See generally *Waste Mgmt. Holdings v. Mowbray*, 208 F3d 288, 296 (III) (A), n. 4 (1st Cir. 2000) ("when the defendant's affirmative defenses . . . may depend on facts peculiar to each plaintiff's case, class certification is erroneous") (citation and punctuation omitted).

[18] *J.M.I.C. Life Ins. Co. v. Toole*, 280 Ga. App. 372, 378 (2) (c) (634 SE2d 123) (2006) (citation omitted).